24 C.C.P.A. (Patents)

## In re WALCH et al.
### Patent Appeal No. 3745.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

Frank S. Busser, of Philadelphia, Pa., for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting, for lack of invention over the cited prior art, claim 16 of appellants' application. Other claims were also involved in said decisions, but this appeal relates only to claim 16, which reads as follows: "16. The process of separating a mixture of more than two constituents of which one of the heavier constituents is a relatively free flowing liquid and the other of the heavier constituents is a relatively viscous material, which comprises subjecting the mixture to centrifugal force, effecting separate discharge of the three constituents by so throttling the discharge through which the two heavier constituents tend to escape as to allow the escape therethrough of only the more free flowing of the two heavier constituents and compel separate outflow of the other heavier constituent."

The references cited are: Kendrick, 1,293,114, February 4, 1919; Fawcett, 1,866,638, July 12, 1932; Crickmer, 1,540,206, June 2, 1925; MacArthur, 1,591,852, July 6, 1926; MacArthur, 1,591,853, July 6, 1926.

Certain apparatus claims were allowed by the Examiner.

The claimed invention relates to a process to effect the separation of a mixture of three liquids by the use of centrifugal force, and so adjusting the means of discharge through which the two heavier constituents tend to escape that only the more free flowing of such constituents will escape through one discharge outlet, and the other heavier constituent through another outlet. The lightest of the three constituents is discharged is the ordinary manner through outlets close to the rotation center of the centrifugal bowl.

According to the specification, the specific use of appellants' process is for the separation of a mixture of oil, free sulphuric acid, and acid sludge.

The patent to Kendrick discloses a centrifugal filtering machine for removing fine particles of matter from liquids, said particles being in a state of suspension in the liquids. In one form shown in the drawings the filter members are made of stacks of thin disks clamped together by nuts on a filter tube. The disks are so close together that the spaces between them may be regarded as of capillary size.

The patent to Fawcett relates to a centrifugal separator for separating grease, "liquor," and solids. The patent states:

"This invention relates to improvements in centrifugal separators and aims at providing a centrifugal separator which will be simple in construction, operate substantially automatically and which will necessitate practically no cleaning for much longer periods than hitherto usual.

"More particularly the invention relates to centrifugal separators of the type in which the solid constituents separated out from the liquor undergoing treatment are discharged through suitable discharge apertures or the like, provided on the machine, for example at the outer periphery of the casing and at points intermediate between the periphery of the casing and the axis of rotation of the machine.

"Centrifugal separators of the foregoing type suffer from the drawbacks either that the discharge apertures for the solid matter are liable to become choked or that a substantial proportion of liquid which it is desired to recover, issues along with the solid matter from the discharge apertures.

"The present invention aims at overcoming these drawbacks and contemplates broadly supplying separately to the interior of the separator, an additional liquid or liquids in sufficient amounts substantially to prevent the useful liquid undergoing purification from issuing with the solid particles discharged from the machine. * * *

"The separator may be supplied with an excess of additional liquid which, during the separation, occupies a zone in the interior of the separator i. e. either in the chamber $f$ or adjacent to the nozzle $c'$ located at a certain distance from the axis of the separator. In the vicinity of said zone are provided one or more apertures or the like through which the excess or foreign liquid is adapted to escape.

"Said aperture or apertures are made of such small or adjustable dimensions that if an appreciable amount of additional liquid be fed to the separator in excess of that passing through it, then said liquid will form a wall inside the overflow point and thereby increase the pressure of the additional liquid inside the centrifuge. The depth of said wall will depend on the amount of excess liquid supplied. In this way, it is possible to vary the pressures of liquid while the centrifuge is rotating or automatically to compensate alterations of gravity of the liquid undergoing centrifugation or of additional liquid or liquids fed to the separator while the latter is running."

These are the only references which relate to the separation of constituents by the use of centrifugal force.

The patent to Crickmer and the two MacArthur patents were not cited by the Examiner, but were cited by the Board. They disclose a separation of two liquids of different viscosity by filtering through small capillary openings which serve to hold back the more viscous liquid, permitting only the free flowing liquid to pass through the openings.

The Board of Appeals in its decision stated:

"It is not new to separate liquids of different viscosity by filtering through capillary openings which serve to hold back the more viscous liquid. The MacArthur patents and the Crickmer patent disclose this. In these patents, the mixture of the liquids is under pressure, and the free flowing liquid alone passes through the openings. Accordingly, ap-

plicants have not made any broad contribution to the art by separating liquids of different viscosity by employing capillary filters. If the openings C' in the Fawcett patent be small enough so as to be of capillary character, the patentee would then obtain a separation of three liquids, the two heavier liquids differing in viscosity. The patentee clearly states that the openings are very small so as to build up a wall of the auxiliary liquid. He also states that they are adjustable. We believe that in view of the well known method of separating liquids of different viscosities by means of capillary openings, the claims are not patentable over Fawcett. The outlets c' in the patents can be adjusted to a capillary size without involving invention if they are not already of that size.

"The examiner also combines the Kendrick patent with Fawcett in rejecting these claims. In Kendrick, the disks are so close together that the spaces between them are clearly of capillary size. The combination of these patents in rejecting the claims is believed to be proper."

Appellants concede that it would not involve invention to modify or adjust the apparatus disclosed by Fawcett to carry out appellants' process, but contend (1) that so to modify Fawcett's apparatus would render it inoperative for the purpose stated in his patent, and (2) that there is nothing in said patent that would suggest to one skilled in the art appellants' process. In their brief they state their position as follows: " * * * our position being, not that invention would be involved in modifying any known centrifuge to enable it to carry out the process, but that the inventive concept is the process, which, if novel, is patentable regardless of the fact that known instrumentalities, slightly modified, or even unmodified, might be capable of practicing it. * * *"

In support of this position appellants rely upon the cases of Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S. Ct. 698, 707, 46 L.Ed. 968, and Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034. These cases hold, in effect, that apparatus suitable to carry out a process may or may not be new or patentable, while the process itself may be altogether new, and produce an entirely new result. In the first cited case the court said: "A process patent, such as that of Jones, is not anticipated by mechanism which might with slight alterations have been adapted to carry out that process, unless, at least, such use of it would have occurred to one whose duty it was to make practical use of the mechanism described. In other words, a process patent can only be anticipated by a similar process. A mechanical patent is anticipated by a prior device of like construction and capable of performing the same function; but it is otherwise with a process patent. The mere possession of an instrument or piece of mechanism contains no suggestion whatever of all the possible processes to which it may be adapted. New Process Fermentation Co. v. Maus, 122 U.S. 413, 428, 7 S.Ct. 1304, 30 L.Ed. 1193, 1198. If the mere fact that a prior device might be made effective for the carrying on of a particular process were sufficient to anticipate such process, the absurd result would follow that, if the process consisted merely of manipulation, it would be anticipated by the mere possession of a pair of hands."

Appellants concede that, if a given process is inherent in the operation of old apparatus, the process is not patentable, but point out that appellants' process is not inherent in the Fawcett apparatus because, if such apparatus was modified to carry out appellants' process, it would be inoperative for the purpose originally intended.

The Solicitor for the Patent Office points out another exception to the general rule that a process patent can be anticipated only by a similar process. This exception is stated in the case of Carnegie Steel Co. v. Cambria Iron Co., supra, viz., that a mechanism may anticipate a process if the use of the mechanism with slight alterations would have occurred to one whose duty it was to make practical use of the mechanism described.

The question before us for decision, therefore, so far as the Fawcett patent alone is concerned, is whether the use of the apparatus disclosed by him to carry out such process would have occurred to one whose duty it was to make practical use of such apparatus, without any previous knowledge of such process. We can find nothing in the Fawcett patent that would suggest to one skilled in the art such use. Fawcett's apparatus was for

the purpose of separating solids and grease from liquor by centrifugal force, which, apparently, from the statements contained in the patent, was old and well known in the prior art. His invention lay in the introduction of another liquid, usually water, for the purpose of preventing the clogging up of the outlet for the escape of the separated solids. This outlet must necessarily be of considerable size, and to adjust said outlet for the purpose of performing appellants' process would render the apparatus inoperative for the purpose originally intended. There is no suggestion anywhere in the patent that one of the heavier constituents might be a viscous liquid, but, on the contrary, both of the liquids named in the patent are free flowing liquids, the lightest constituent, grease, corresponding to the lightest constituent of appellants' process, having an outlet near the center of the centrifugal bowl, the purified liquor having a separate outlet near the periphery of the bowl, and the solids with water having a third outlet. The only purpose of the third liquid in Fawcett is to facilitate the escape from the bowl of the solids. Appellants' process, on the other hand, provides for separate outlets for the two heavier constituents by means of the relative size of two outlets, one permitting the escape of the more free flowing of the two heavier constituents through an outlet so small as to prevent the escape of the other heavy constituent.

It is our opinion that this process is neither inherent in Fawcett's apparatus, nor would it be obvious to one skilled in the art making practical use of such apparatus. Neither do we find any suggestion in the Fawcett patent of appellants' process.

As a second ground of rejection the Examiner found the claim before us unpatentable over Fawcett in view of Kendrick. This ground of rejection was also expressly affirmed by the Board of Appeals. While it is true that the filters disclosed by Kendrick may be regarded as of capillary size, there is nothing in said patent suggesting the separation of three constituents, two of which are heavier than the third, and we are of the opinion that one skilled in the art, with both the Fawcett and Kendrick patents before him, could not evolve appellants' process without the exercise of the inventive faculty.

We think the decision of the Board of Appeals may be construed as rejecting claim 16 upon a third ground, not considered by the Examiner. This ground is that, it being old to separate liquids of different viscosity by filtering through capillary openings, which serve to hold back the more viscous liquid, as disclosed by the two patents to MacArthur and the patent to Crickmer, it did not involve invention to effect the separation of three constituents through the employment of centrifugal force, as embraced in claim 16, in view of the Fawcett patent.

While we are not so clear that there was error in rejecting the claim upon this ground as we are with respect to the other two grounds of rejection, we do not think that it would be obvious to one skilled in the art, with the patents cited before him, that appellants' process could be employed for the separation of three components, two of them being heavier than the third, and one of the heavier components being a relatively free flowing liquid and the heavier being a relatively viscous material. However this may be, we think there is such doubt regarding the obviousness of appellants' process from said references that, in accordance with the well-established rule, the doubt should be resolved in favor of appellants and the claim should be allowed.

For the reasons stated, the decision of the Board of Appeals, with respect to claim 16, is reversed.

Reversed.